# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

CORRECTED: AUGUST 23, 2007
RENDERED: JUNE 21, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-000815-MR



ROBERT FLANDERS                                                         APPELLANT

V.
ON APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE GREGORY ALLEN LAY, JUDGE
NOS. 04-CR-000193 AND 05-CR-000089

COMMONWEALTH OF KENTUCKY                                       APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Robert Flanders was sentenced in Laurel Circuit Court to consecutive terms of imprisonment of forty (40) years for Wanton Murder[1] and five (5) years for Tampering with physical evidence.[2] Appealing as a matter of right,[3] Flanders argues that the trial court committed reversible error by: (1) denying his motion for a directed verdict; (2) allowing the Commonwealth to misrepresent evidence in its closing argument; and (3) denying his motion to exclude a photograph of the victim's body. For the following reasons, we affirm Flanders' convictions.

This case began on April 1, 2004, when Flanders killed Ray Coleman. Coleman, Flanders' friend from childhood, was staying in Flanders' trailer. On the evening in

---

[1] KRS § 507.020(b).

[2] KRS § 524.100.

[3] Ky. Const. § 110(2)(b).

question, Flanders and his girlfriend, Paula Cheek, were in the trailer when the victim returned. Tension soon developed between Flanders and Coleman regarding Coleman's use of the telephone. At this point, Cheek exited the residence and Flanders followed. After Flanders persuaded Cheek to return, they both re-entered the trailer. Inside the trailer, Flanders noticed that his pocketknife was missing. Flanders asked Coleman if he had the knife, and he responded affirmatively.

Flanders then picked up a nearby butcher's block of kitchen knives, slammed it on the counter, and told Coleman that if he wanted a knife he could have any one of them. Flanders then turned to walk toward the bedroom. Coleman stood up with a cane in one hand and the pocketknife in the other and told Flanders if he wanted the knife he could come and get it. However, Cheek was unable to remember if the pocketknife was open or closed. The two men then engaged in a physical altercation involving pushing and shoving. During the altercation, Flanders jumped on Coleman, put one arm around his neck, and grabbed a knife from the butcher block with his other hand. Cheek then ran into the master bedroom and shortly thereafter heard a thump. When she returned to the kitchen area, she saw Flanders standing over the dying Coleman.

Flanders and Cheek then went to see Harold Cornett. Cornett returned with Flanders and Cheek to the crime scene and helped to clean up the scene and dispose of the body. Cornett testified that he noticed the pocketknife lying closed on the ground near the victim's body. Cornett and Flanders wrapped the victim in plastic garbage bags and disposed of the body a few days later. A few months after the incident, Mrs. Cheek and Flanders ended their romantic relationship. After Cheek informed the local

authorities of Coleman's death, the police recovered the body with Flanders' assistance. Flanders' primary defense at trial was that he was acting in self-defense when he stabbed the victim. However, the jury found Flanders guilty of Wanton Murder and Tampering with physical evidence. The trial court sentenced Flanders to forty-five (45) years in prison.

Flanders' first argument on appeal is that the trial court committed reversible error by denying his motion for a directed verdict on the charge of wanton murder. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt."[4] In doing so, we must draw all fair and reasonable inferences from the evidence in the Commonwealth's favor.[5]

A person is guilty of wanton murder when "under circumstances manifesting an extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person."[6] Although Flanders admits to stabbing Coleman, he argues that his belief in the need to act in self-defense precludes a jury from finding him guilty of wanton murder.

Under KRS § 503.050(1), "[t]he use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person." As we enumerated in Commonwealth v. Hager, "any actual belief in the need for self-protection, even if wantonly or recklessly held, also precludes a conviction for wanton murder, because such belief negates the aggravating element of 'extreme

---

[4] Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991).

[5] Id.

[6] KRS § 507.020(1)(b).

3

indifference to the value of human life.'"[7] Thus, if Flanders subjectively believed in the necessity of self-defense, even if that belief was wantonly or recklessly held, he could not be convicted of wanton murder.

Additionally, KRS § 503.060(3) provides that the use of physical force in self-defense is not justifiable if "[t]he defendant was the initial aggressor." In such a situation, self-defense is not applicable unless (a) the initial physical force was nondeadly and the force returned by the other is such that he believes himself to be in danger of death or serious physical injury or (b) the defendant withdraws from the encounter.[8]

A directed verdict would not have been proper if the evidence, viewed in the light most favorable to the Commonwealth, provides a reasonable basis for the jury to conclude that Flanders did not actually believe that he was acting in self-defense or, in the alternative, that Flanders was the initial aggressor. Upon viewing the evidence as a whole, we cannot say that the jury's determination was clearly unreasonable. First, there was sufficient evidence for the jury to conclude that Flanders did not subjectively believe in the need for self-defense. Testimony at trial detailed that the victim had trouble walking, that the pocket knife in the victim's possession was not open, and that Flanders took extensive measures to conceal the victim's death. Further, there was testimony that the victim was not intoxicated and that Flanders may have been the initial aggressor or may have escalated the violent encounter. Moreover, the trial court properly instructed the jury on the justification of self-defense, including the fact that an actual belief in the need for deadly force, even if wantonly or recklessly held, precludes

---

[7] 41 S.W.3d 828, 842 (Ky. 2001).

[8] KRS § 503.060.

4

a wanton murder conviction. Properly instructed, the jury determined that self-defense did not justify Flanders' conduct. Under the evidence, we cannot say that this determination was clearly unreasonable. Therefore, the trial court properly denied Flanders' motion for a directed verdict on the charge of wanton murder.

Flanders' second argument on appeal is that during its closing argument, the Commonwealth misrepresented the testimony of the medical examiner, Dr. Greg Davis. At trial, Flanders introduced evidence that the victim may have been intoxicated prior to his death. Dr. Davis testified that **while he did not find any alcohol in Coleman's spleen, he could not say with certainty whether or not Coleman had alcohol in his body at the time of his death.** During its closing argument, the Commonwealth referred to Dr. Davis' testimony by commenting that he expected to find alcohol in Coleman's spleen if he had been drinking, but did not find any.

On appeal, Flanders alleges that the prosecutor's comments were a misrepresentation of the evidence and warrant a reversal of his conviction. In analyzing Flanders' claim, we must "determine whether the conduct was of such an 'egregious' nature as to deny the accused his constitutional right of due process of law."[9] Further, we have repeatedly noted that "prosecutors are allowed wide latitude during closing arguments and may comment upon the evidence presented."[10] Moreover, Flanders failed to object to the Commonwealth's statement at trial. Thus, this issue is unpreserved and we review under RCr 10.26's palpable error standard.

Flanders alleges that the Commonwealth effectively told the jury that if Coleman was drinking, Dr. Davis would have found alcohol in his spleen. However, the

---

[9] Foley v. Commonwealth, 953 S.W.2d 924, 939 (Ky. 1997).
[10] Maxie v. Commonwealth, 82 S.W.3d 860, 866 (Ky. 2002).

Commonwealth said that if Coleman was drinking, Dr. Davis *expected* to find alcohol in his spleen. The difference is significant in that the Commonwealth's statement did not preclude the possibility of Coleman's intoxication. **The jury previously had the opportunity to hear the actual testimony of Dr. Davis – that he was uncertain whether Coleman had alcohol in his body at his time of death based in part because he did not find alcohol in Coleman's spleen. The prosecutor's statement only implied that had Dr. Davis found alcohol in Coleman's spleen he would have known with certainty that Coleman had been drinking. This is certainly a permissible comment based upon the evidence for a prosecutor to make, and did not so misrepresent Dr. Davis's testimony to cause manifest injustice.** Thus, we find no error, palpable or otherwise, in the Commonwealth's closing argument.

Flanders' final argument is that the trial court denied him due process by allowing the Commonwealth to introduce into evidence, over objection, an 8 ½" x 11" color photograph of Coleman's decomposed body lying on an autopsy table. Flanders argues that the picture was inflammatory and unnecessary as the defense was willing to stipulate to the nature of the injuries.

We have held that "[t]he general rule is that a photograph, otherwise admissible, does not become inadmissible simply because it is gruesome and the crime is heinous."[11] Further, "the defendant may not stipulate away the parts of the case that he does not want the jury to see."[12] We have deviated from this general rule when photographs show mutilation, decomposition, and decay not directly related to the

---

[11] Funk v. Commonwealth, 842 S.W.2d 476, 479 (Ky. 1992).

[12] Barnett v. Commonwealth, 979 S.W.2d 98, 103 (Ky. 1998).

crime.[13] In reliance on Funk, Flanders argues that the picture was not relevant and unnecessarily gruesome given the decomposed state of the body.

Flanders' argument fails, however, because the decomposition he complains of resulted from his own efforts to conceal Coleman's death. As discussed in Foley, photographs of this nature are especially relevant to show the measures taken to conceal the crime.[14] Moreover, the Commonwealth introduced only one (1) photograph and chose the least gruesome photo available. Upon viewing the photograph, we confidently conclude that the trial court did not abuse its discretion in admitting this evidence. Thus, the introduction of the photo did not deny Flanders due process of law.

For the aforementioned reasons, we affirm Flanders' conviction.

All sitting. All concur.

---

[13] Funk, 842 S.W.2d at 479.

[14] Foley, 953 S.W.2d at 935.

COUNSEL FOR APPELLANT:

Randall L. Wheeler
Assistant Public Advocate
Department of Public Advocacy
Suite 302, 100 Fair Oaks Lane
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

William Robert Long, Jr.
Assistant Attorney General
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204

# Supreme Court of Kentucky

## 2005-SC-000815-MR

ROBERT FLANDERS        APPELLANT

|  |  |
|---|---|
| V. | ON APPEAL FROM LAUREL CIRCUIT COURT<br>HONORABLE GREGORY ALLEN LAY, JUDGE<br>NOS. 04-CR-000193 AND 05-CR-000089 |

COMMONWEALTH OF KENTUCKY        APPELLEE

## ORDER DENYING PETITION FOR REHEARING
## AND MODIFYING OPINION

The petition for rehearing filed by the Appellant, Robert Flanders, is hereby denied.

The Opinion of the Court rendered herein on June 21, 2007, is modified by changes to pages 5 and 6 of that opinion. Due to pagination, the attached unpublished opinion substitutes in full for the previously rendered opinion. Said modification does not affect the holding.

All sitting. Lambert, C.J.; Cunningham, Minton, Noble, Schroder and Scott, JJ., concur.

ENTERED: August 23, 2007.

CHIEF JUSTICE